Michael E. Quiat, Esq.
Atty ID No. 015911985
USCHER, QUIAT, USCHER & RUSSO
A Professional Corporation
433 Hackensack Avenue, 2nd Floor
Hackensack, NJ 07601
Phone  201-342-7100
Fax     201-342-1810
*Attorneys for Plaintiff, Aaron Slavutin*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON SLAVUTIN, | Civil Action No. _____ |
| Plaintiff, | ECF CASE |
| vs. | |
| STANDARD INSURANCE COMPANY, | COMPLAINT |
| Defendant. | |

Plaintiff, AARON SLAVUTIN, by way of Complaint against the Defendant, STANDARD INSURANCE COMPANY (hereinafter "Standard" or "Defendant'), alleges as follows:

1. Plaintiff is a resident of New York, with a principal residence in New York City.

2. Defendant, Standard, is a disability insurance carrier licensed to do business in the State of New York with a principal place of business in the State of Oregon.

3. Jurisdiction and venue are proper in this Court pursuant to 29 USC § 1001 *et seq.*, 28 USC § 1331 *et seq.* and 28 USC § 1391 *et seq.*

**ESSENTIAL FACTS**

4. Plaintiff, Aaron Slavutin (hereinafter referred to as "Mr. Slavutin" or "Plaintiff"), is a 35-year-old man who lives in New York, New York. Mr. Slavutin was employed by

Kilpatrick Townsend & Stockton LLP ("Kilpatrick") from October 2016 through February 2017 as an Attorney in Kilpatrick's New York City office. While employed by Kilpatrick, Plaintiff was a beneficiary under Kilpatrick's Long Term Disability plan underwritten by Standard Insurance Company ("Standard") through Policy No. 753323 (hereinafter referred to as the "Policy" and attached hereto as **Exhibit A**).

5. As an Attorney for Kilpatrick, Mr. Slavutin was responsible for representing official committees of unsecured creditors and other parties in bankruptcy and insolvency matters. Mr. Slavutin drafted and argued motions and briefs. His job as an associate was fast-paced, highly stressful and demanded extremely long hours of maintained focus and concentration. For example, just in the month of January 2017, Mr. Slavutin billed approximately 300 hours for the firm.

6. As an Attorney for Kilpatrick, Mr. Slavutin was constantly engaging in complex legal analysis, crafting complex legal arguments, communicating with clients, Judges and opposing counsel, and performing a myriad of other responsibilities associated with his occupation. Mr. Slavutin's legal talent and devoted work ethic was reflected in his annual compensation at Kilpatrick, as he was earning approximately $240,000.00 per year prior to his disability.

7. In 2012, Mr. Slavutin was having a difficult time maintaining his focus at work, frequently interrupting others, and struggling to listen when spoken to and properly organize his time. As a result, Mr. Slavutin began treatment with psychiatrist Dr. Andrew Chen as well as psychologist Dr. Bruce Berman. After clinical evaluation and assessment, Mr. Slavutin was diagnosed by both Dr. Chen and Dr. Berman with Attention Deficit Hyperactivity Disorder, more commonly known as ADHD.

8. Mr. Slavutin was originally prescribed Strattera to treat his ADHD and was later prescribed Adderall for the same purpose. Between the time of his diagnosis in 2012 and February 2017, Mr. Slavutin's ADHD was well controlled with these medications.

9. In mid-February 2017, shortly after Mr. Slavutin returned from a vacation to Iceland with his wife, Mr. Slavutin entered a manic state for the first time in his life. His behavior was unlike anything he had previously experienced or his family had ever witnessed. He was excessively talkative, spoke more rapidly than ever before, and was very energetic even with only a couple hours of sleep. Mr. Slavutin sent numerous e-mails to his family, friends and work colleagues, including his supervisors at Kilpatrick. The content of these e-mails made little sense, and alluded to vast conspiracies with no basis in reality. Ultimately, he was terminated from his position at Kilpatrick on February 17, 2017, due to his erratic and disruptive behavior.

10. After his termination, Mr. Slavutin's mental state worsened and his mania escalated dangerously. As a result, on February 20, 2017, his family had him admitted to the psychiatric unit at Columbia Presbyterian Medical Center in New York City.

11. During his hospital stay, which lasted until March 15, 2017, Mr. Slavutin was diagnosed with bipolar disorder. This was the first time in his life that he had received that diagnosis.

12. In December 2017, due to another manic episode, Mr. Slavutin was hospitalized at NYU Langone in Manhattan for approximately one week and at Silver Hill Hospital in New Canaan, Connecticut for approximately two months from December 2017 to February 2018.

## PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS

13. Under the terms of the Policy,

> "You are Disabled if you meet [the]… Own Occupation Definition of Disability….
> A. Own Occupation Definition of Disability

> During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.
> You are disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your own Occupation."

(**Exhibit A**, p. 7).

14. The Policy provides the following exclusion:

    > "You are not covered for a Disability caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition unless, on the date you become Disabled, you:
    > a. Have been continuously insured under the Group Policy for 12 months; and
    > b. Have been Actively at Work for at least one full day after the end of that 12 months."

    (**Exhibit A**, p. 20).

15. The Policy defines "Preexisting Condition" as follows:

    > "1. Preexisting Condition means a mental or physical condition whether or not diagnosed or misdiagnosed:
    > a. For which you have done any of the following:
    >    i. Consulted a physician or other licensed medical professional;
    >    ii. Received medical treatment, services or advice;
    >    iii. Undergone diagnostic procedures, including self-administered procedures;
    >    iv. Taken prescribed drugs or medications;
    > b. Which, as a result of any medical examination, including routine examination, was discovered or suspected;
    > at any time during the 90 day period just before your insurance becomes effective."

    (**Exhibit A**, p. 19).

16. The Policy also contains the following limitation:

    > "Payment of LTD Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to

4

> by any one or more of the following, or medical or surgical treatment of one or more of the following:
> 1. Mental Disorders; or
> 2. Substance Abuse.
>
> However if you are confined in a Hospital solely because of a mental disorder at the end of the 24 months, this limitation will not apply while you are continuously confined."

(**Exhibit A**, p. 20).

17. Mental Disorder is defined as follows:

> "Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause (including any biological or biochemical disorder or imbalance of the brain) or the presence of physical symptoms. Mental Disorder includes, but is not limited to, bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, anxiety and anxiety disorders."

(**Exhibit A**, p. 20).

18. Mr. Slavutin first applied for short term disability benefits with Standard under the terms of his Policy in or about February 2017, and the claim was approved by Standard shortly thereafter. After exhausting the 12 week short term disability benefit period, Mr. Slavutin filed for long term disability benefits as he continued to suffer with the psychiatric restrictions and limitations of his bipolar disorder. Mr. Slavutin's claim was supported by Dr. Berman, Dr. Chen (former psychiatrist at that time), Dr. Glenn Brottman (current psychiatrist at that time), and Dr. Todd Essig (couples therapist since 2015).

19. Mr. Slavutin's Policy became effective on November 1, 2016. Since he had not been continuously insured under the Policy for 12 months prior to claiming a disability, Standard conducted a preexisting condition investigation to determine if Mr. Slavutin was suffering from

bipolar disorder during the 90 day period prior to becoming effectively insured, which was August 3, 2016 to October 31, 2016 (the "90 Day Period").

## DEFENDANT'S DENIAL OF PLAINTIFF'S BENEFITS

20. Standard sent Mr. Slavutin a letter dated August 17, 2017 (hereinafter referred to as the "First Denial Letter" and attached hereto as **Exhibit B**) denying his claim for long term disability benefits. The First Denial Letter asserted that his claim was excluded from coverage under the Policy because "his condition was caused or contributed to by a Preexisting Condition." In denying Mr. Slavutin's benefits, Standard asserted that while Mr. Slavutin had not been diagnosed with bipolar disorder prior to February 2017, his "bipolar disorder was present – albeit in the early stages – during the 90-day period …, and that it had been misdiagnosed as ADHD." (**Exhibit B**)

21. Along with the First Denial Letter, Standard included the report of Cheryn Grant, D.O. (attached hereto as **Exhibit C**) who had reviewed Mr. Slavutin's medical records on behalf of Standard, but who never met with Mr. Slavutin. Nowhere in this report did Dr. Grant indicate that Mr. Slavutin's bipolar disorder had been misdiagnosed as ADHD during the 90 Day Period. (**Exhibit C**).

22. Mr. Slavutin submitted a request for an administrative appeal to Standard dated October 9, 2017. Mr. Slavutin's appeal request included letters from Dr. Berman (**Exhibit D**), Dr. Chen (**Exhibit E**), and Dr. Essig (**Exhibit F**).[1]

23. All three of Mr. Slavutin's doctors who treated him during the 90 Day Period (and for years before) have agreed that Mr. Slavutin never exhibited any signs or symptoms of bipolar

---

[1] Exhibits D, E, and F include both a letter that was submitted to Standard with Plaintiff's appeal request as well as doctors' notes and reports that were submitted prior to that request.

6

disorder prior to February 2017, and therefore he had not been misdiagnosed as having ADHD during the 90 Day Period, contrary to Standard's position.

24. Dr. Berman noted that, except for distractibility (which is a common symptom of ADHD), he had not observed Mr. Slavutin having any of the eight symptoms of mania "even in a mild or attenuated form, at any time during the period [they] worked together from 07/27/12 up until [Mr. Slavutin's] hospitalization in February of 2017." Dr. Berman met with Mr. Slavutin ten times during the 90 Day Period, and none of the case notes from those meetings indicate the presence of bipolar disorder symptoms. (**Exhibit D**).

25. Dr. Chen diagnosed Mr. Slavutin with ADHD in December 2012. Dr. Chen has asserted that "there were no signs or symptoms of bipolar disorder" during the 90 Day Period and therefore, it is "totally incorrect speculation without any evidence" to conclude that "bipolar disorder was present . . . and that it had been misdiagnosed as ADHD." (**Exhibit E**).

26. Dr. Essig has asserted that during the entire time he treated Mr. Slavutin, including during the 90 Day Period, he "never had any symptoms of mania or hypomania . . . . Nor did [he] show any other symptoms of bipolar disorder." (**Exhibit F**).

27. Notwithstanding the unanimous conclusion of Mr. Slavutin's three doctors, Standard rejected Mr. Slavutin's appeal and affirmed its decision to deny his claim for long term disability benefits in a letter dated November 30, 2017 (attached hereto as **Exhibit G**).

28. Mr. Slavutin has now exhausted his administrative remedies.

**PLAINTIFF'S RESONSE TO DEFENDANT'S DENIAL OF BENEFITS**

29. Standard's asserted basis for denial of benefits is erroneous as well as arbitrary and capricious. Standard's reviewers disregarded the overwhelming objective medical evidence from Mr. Slavutin's treatment providers regarding the lack of signs and symptoms associated with bipolar disorder during the 90 Day Period. As is evident from the letters submitted by these

7

doctors during the administrative appeal, Mr. Slavutin did not suffer from bipolar disorder and never exhibited any signs or symptoms associated with bipolar disorder prior to his manic episode in February 2017. There is no credible evidence that Mr. Slavutin ever had bipolar disorder before February 2017, and the assertion by Standard that he did was self-serving, erroneous, arbitrary and capricious, and the result of Standard's inherent conflict of interest.

**AS AND FOR A FIRST CAUSE OF ACTION**

30. Plaintiff repeats and re-alleges each and every allegation set forth above in Paragraphs 1 through 29 as if fully set forth at length herein.

31. Plaintiff is disabled within the meaning of the terms of the Policy, and as such is entitled to disability benefits thereunder.

32. Defendant's decision on August 17, 2017 denying Plaintiff's claim for benefits was arbitrary and capricious and not based on substantial evidence. Plaintiff was deprived of a full and fair review when he appealed the denial of his benefits in October 2017.

33. Moreover, Defendant is acting under a clear conflict of interest within the meaning of *Metropolitan Life Insurance Company v. Glenn*, 128 S. Ct. 2343 (2008), which conflict has poisoned its decision-making in this case, to Plaintiff's great prejudice.

34. By virtue of the foregoing, the Defendant has breached the terms of the Policy and has violated the requirements of the Employee Retirement Income Security Act, 29 USC § 1132(a)(1)(B), § 502(a)(1)(B) and applicable regulations thereunder.

**AS AND FOR A SECOND CAUSE OF ACTION**

35. Plaintiff repeats and re-alleges each and every allegation set forth above in Paragraphs 1 through 34 as if fully set forth again herein.

36. By virtue of the foregoing, the Defendant's decision on August 17, 2017, to deny Plaintiff's claim for benefits constitutes a breach of the Defendant's fiduciary duty owed to

Plaintiff under 29 USC § 1132(a)(3) and § 502(a)(3), because Defendant placed its own interests over those of the Plaintiff.

37. Among the fiduciary duties breached by Defendant are (i) failing to properly investigate Plaintiff's claim before denial of benefits; (ii) failing to give proper consideration to the evidence which supported Plaintiff's claim; (iii) disregarding the opinions of Plaintiff's treatment providers; and (iv) falsely asserting that Plaintiff suffered from bipolar disorder prior to February 2017 when there is no credible evidence to support that assertion.

38. By virtue of the Defendant's breach of fiduciary duty, Plaintiff has incurred losses and harm, separate, apart, and in addition to his right to benefits as alleged in the First Cause of Action. Accordingly, Plaintiff is entitled to equitable relief in a form to be determined by the Court upon a full consideration of the facts.

WHEREFORE, Plaintiff seeks a judgment against the Defendant as follows:

(a) Declaring Plaintiff disabled within the meaning of the Policy as set forth in **Exhibit A** of the Complaint.

(b) Ordering the Defendant to pay Plaintiff disability benefits retroactive to the date of wrongful denial in August 2017, and to continue paying the Plaintiff's benefits for long term disability under the terms of the Policy as alleged in the First Cause of Action;

(c) Ordering appropriate equitable relief to Plaintiff, in accordance with the Second Cause of Action, as this Court may deem appropriate.

(d) Awarding to Plaintiff his costs of suit, including reasonable attorney's fees; and

(e) Granting such further relief as this Court may deem just and proper.

> USCHER QUIAT, USCHER & RUSSO
> A Professional Corporation
> 433 Hackensack Avenue, 2nd Floor
> Hackensack, NJ 07601
> Phone  201-342-7100
> Fax     201-342-1810

Dated: July 2, 2018          By:   /s/Michael E. Quiat
                                   MICHAEL E. QUIAT
                                   Atty ID No. 015911985
                                   ***Attorney for Plaintiff, Aaron Slavutin***

## **CERTIFICATION**

I certify that the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no other parties should be joined in this action.

> USCHER QUIAT, USCHER & RUSSO
> A Professional Corporation
> 433 Hackensack Avenue, 2nd Floor
> Hackensack, NJ 07601
> Phone  201-342-7100
> Fax     201-342-1810

Dated:  July 2, 2018          By:     /s/Michael E. Quiat
                                       MICHAEL E. QUIAT
                                       Atty ID No. 015911985
                                       ***Attorney for Plaintiff, Aaron Slavutin***